In re Kenneth J. **KESSLER**, Debtor.

Kenneth J. **KESSLER**, Plaintiff,

v.

**HOMESTEAD SAVINGS** and Edward Sparkman, Standing Trustee, Defendants.

Bankruptcy No. 88–11792S.
Adv. No. 89–0040S.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 11, 1989.

---

David A. Searles, Community Legal Services, Inc., Philadelphia, Pa., for debtor.

Lawrence T. Phelan, Philadelphia, Pa., for defendant/Homestead Sav.

Edward Sparkman, Philadelphia, Pa., standing Chapter 13 trustee.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

In this adversary proceeding, filed on January 23, 1989, the Debtor seeks to reduce, to $20,610.00, the secured claim of his Mortgagee, HOMESTEAD SAVINGS (hereinafter referred to as "the Mortgagee"), against property which is security for its mortgage situated at 2242 Larue Street, Philadelphia, Pennsylvania 19137, on the

basis of 11 U.S.C. § 506(a) and a recoupment claim arising from alleged violations of the federal Truth–in–Lending Act (hereinafter "TILA"), 15 U.S.C. § 1601, *et seq.* The Debtor's Plan, confirmed on February 16, 1989, contemplates payment of the entire valid secured claim of the Mortgagee, as opposed to merely effecting a cure of arrearages. In addition to making a claim on the merits, the Debtor seeks to enhance his cause by invoking res judicata arising from (1) a decision in the Debtor's prior Chapter 7 case, reported at 76 B.R. 434 (Bankr.E.D.Pa.1987); and (2) the confirmation of his Plan, which purportedly forecloses the Mortgagee's defenses based upon 11 U.S.C. § 1322(b)(2). Whether dazzled by this display of alternative theories or simply recognizing the strength of the merits of the Debtor's causes of action, the sum total of the response of the Mortgagee is a letter the text of which is "I will not be filing a Brief on behalf of Homestead Savings relative to the above matter."

Since the Mortgagee obviously is not putting great efforts into a defense, it is somewhat puzzling to us is why the Mortgagee did not settle this matter and required the Debtor and this court to go through the exercise of arguing and deciding this proceeding. Forced to do so, we note that we are unimpressed with both res judicata arguments, but are convinced that, although his calculations are a penny off, the Debtor is entitled to the relief sought by him on the merits.

The Stipulation of Facts which constitutes the record in this proceeding [1] establishes sufficient grounds to easily render a decision on the merits on the basis of our own prior decisions. The secured proof of claim in issue was filed in the amount of $44,197.78. However, the parties agree that the Debtor's "residential property" is valued at only $23,000.[2] A water/sewer

---

1. This document was, due to the negligence of counsel for both parties, not filed until May 4, 1989, after the briefing was completed and the court, unable to locate it, called its absence to the attention of counsel. Several days later, counsel for the Mortgagee presented it to us in open court.

2. It is unclear whether the parties intended this figure to include *only* the real estate or *also* the personalty which is subject to the Mortgagee's security interest under the terms of the mortgage. We note that the Debtor's motion to avoid the security interest held by the Mortgagee on his personalty was granted without opposition on April 6, 1989. Since the Mortgagee

lien of the City of Philadelphia in the amount of $1,389.99 is agreed to have priority over the Mortgagee's claim.[3] The validity of a $1,000 TILA recoupment claim is conceded. In our prior Opinion, which quoted from the mortgage, we found a TILA violation to arise because the Mortgagee's assignor failed to recite, in the TILA disclosure statement presented to the Debtor in connection with the mortgage loan, a security interest was taken on "plumbing, cooking, hearing, lighting fixtures, appliances" and other appurtenances to the realty as well as on the realty itself. 76 B.R. at 436–37.

The Stipulation expressly includes a recitation that the Mortgagee claims that 11 U.S.C. § 1322(b)(2), which reads as follows, bars the Debtor's invocation of 11 U.S.C. § 506(a) to allegedly "modify" its secured claim:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

، (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

Presumably, this Code section constitutes the Mortgagee's defense in this proceeding.

 For two separate reasons, both clearly articulated by our prior decision in *In re Caster*, 77 B.R. 8, 11–14 (Bankr.E.D. Pa.1987), the contention that § 1322(b)(2) in fact provides a defense to the Mortgagee must fail. *Accord, In re Crompton*, 73 B.R. 800, 805–06 (Bankr.E.D.Pa.1987); and *In re Jablonski*, 70 B.R. 381, 386 (Bankr.E.

D.Pa.1987), *aff'd*, 88 B.R. 652 (E.D.Pa.1988) (decided by us prior to *Caster*). First, since the mortgage embraces a security interest in personalty other than the realty itself, as was noted in our decision concluding that a violation of TILA was present, the Mortgagee's claim is not "secured *only* by a security interest in real property" (emphasis added), as is required to allow invocation of § 1322(b)(2). 77 B.R. at 11.[4] Secondly, we do not believe that § 1322(b)(2) should be read, in any context, as barring a debtor from bifurcating an ostensibly secured claim into its secured and unsecured portions, as is authorized by § 506(a). *Id.* at 13–14.

We concede that the principles set claim in *Caster, Crompton*, and *Jablonski* have not been universally adopted by all other bankruptcy courts. However, there are several strong indications that it represents the emerging majority view.

First, it follows a long line of decisions of the honored former chief judge of this court, Emil F. Goldhaber. *See, e.g., In re Everett*, 48 B.R. 618 (Bankr.E.D.Pa.1985); and *In re Whitener*, 63 B.R. 701 (Bankr.E. D.Pa.1986). Secondly, its principles have been adopted by the present chief judge of this court, Thomas M. Twardowski, in *In re Kehm*, 90 B.R. 117, 119–21 (Bankr.E.D.Pa. 1988), and by our other respected colleague, Judge Bruce Fox in *In re Bender*, 86 B.R. 809, 814–15 (Bankr.E.D.Pa.1988). Thirdly, the oft-cited line of New Jersey cases to the contrary, *e.g., In re Hynson*, 66 B.R. 246, 248, 251–52 (Bankr.D.N.J. 1986); and *In re Smith*, 63 B.R. 15 (Bankr. D.N.J.1986), has been undercut by a district court decision disapproving their results. *In re Harris*, 94 B.R. 832, 834–37

---

has· not raised the issue of the value of the Debtor's personalty as a separate element in the § 506(a) calculation, we will assume that the $23,000 figure represents the value of all of the property which the Mortgagee contends is covered by the mortgage.

**3.** *But see In re Aikens*, 94 B.R. 869 (Bankr.E.D. Pa.1989) (secured status of City water/sewer lien may be subject to attack). However, clearly, if no attack is made, the City's lien remains intact.

**4.** The Mortgagee has not raised the rather logical argument that the avoidance of its lien on personalty foreclosed this argument. It certainly does not seem fair for the Debtor to contend that a security in this property is valid when it serves his interest (in this argument and the TILA claim) and invalid when it does not (in the lien avoidance motion and the process of valuing the property in which the Mortgagee has an interest). The Mortgagee does not raise this anomaly as a defense either. Therefore, we shall not consider it further.

(D.N.J.1989). *Compare Jablonski, supra,* 88 B.R. at 654–55 & n. 3 (local district court upholds our use of § 506(a) to bifurcate a secured claim prior to confirmation, while noting the since-discredited *Smith* holding that § 1322(b)(2) may create an impediment to the use of § 506(a) at the time of confirmation). Finally, courts elsewhere have recently expressly adopted the reasoning of *Caster. See, e.g., In re Hougland,* 93 B.R. 718, 721–22 (D.Ore.1988); and *In re Frost,* 96 B.R. 804, 806–07 (Bankr.S.D.Ohio 1989). *See also, e.g., In re Bruce,* 40 B.R. 884, 886–88 (Bankr.W.D.Va.1984); *In re Morphis,* 30 B.R. 589, 594 (Bankr.N.D.Ala. 1983); *In re Simpkins,* 16 B.R. 956, 960–69 (Bankr.E.D.Tenn.1982); and *In re Neal,* 10 B.R. 535, 538–40 (Bankr.S.D.Ohio 1981).

Therefore, we continue to adhere to the principles outlined in *Caster, Crompton,* and *Jablonski.* As a result, the secured portion of the Mortgagee's claim must be reduced to $23,000, less the $1,389.99 prior City claim, less the $1,000 TILA claim,[5] or to $20,610.01.

■ The alternative theories of the Debtor, res judicata arising from the prior decision in the Chapter 7 case; and from the Confirmation Order of February 16, 1989, in this case, appear to us to be far more slippery slopes than this straightforward rejection of the Mortgagee's only defense on the merits.

Res judicata arising from the prior decision in the adversary proceeding instituted in the Chapter 7 case would only be appropriate if the final judgment there had not only been entered, as it was, in a prior suit involving the same parties or their privies, but also if the cause of action in that prior

suit had been the same as in the instant proceeding. *See United States v. Athlone Industries, Inc.,* 746 F.2d 977, 983 (3d Cir. 1984); and *In re Laubach,* 77 B.R. 483, 485 (Bankr.E.D.Pa.1987). Certain aspects of the instant proceedings may reflect the same cause of action as was presented in the prior proceeding, such as the TILA claim. However, clearly § 1322(b)(2) was not in issue in the prior proceeding, since that was a Chapter 7 case.[6] Moreover, decisions rendered in the context of one bankruptcy case rarely carry over to another unless the facts are unchanged as a result of intervening events. *See In re Norris,* 39 B.R. 85, 87 (E.D.Pa.1984); and *In re Taylor,* 77 B.R. 237, 240 (Bankr. 9th Cir.1987). It would be most unfair to bind the Mortgagee to a decision in a prior case in which the stakes were different than those in issue here. There, the Debtor presented no Plan and unsuccessfully merely tried to delay the Mortgagee's obtaining relief from the automatic stay, a result that even the Debtor conceded would be available to the Mortgagee at the imminent juncture when the case was closed. 76 B.R. at 438–39. We, nor probably the Mortgagee, did not suspect, at that time, that the subsequent filing of a Chapter 13 case would ensue.

Moreover, application of res judicata from the result of that prior adversary proceeding to the instant proceeding would clearly be a two-edged sword as to the Debtor. In that earlier Opinion and Order, we granted the Mortgagee's assignor relief from the automatic stay and determined its secured claim to be $22,000, not $20,-610.01.[7] *Id.* at 439. The Debtor is not clearly seeking those same results here.

5. We note that the district court, without discussing the issue, affirmed our decision *Jablonski* holding that the Debtor could offset the entire TILA recoupment against the secured portion of the mortgagee's claim. 70 B.R. at 390. Therefore, we decline to follow Judge Fox's holding in *Bender,* 86 B.R. at 816–17, to the contrary of our determination in *Jablonski* on this point, that the recoupment penalty should be bifurcated in the same fashion as the mortgagee's claim.

6. We observe that the Debtor's apparent employment of a "Chapter 20" proceeding, *i.e.,* immedi-

ately following his Chapter 7 case with a Chapter 13 case, has escaped objection. *Compare In re Metz,* 820 F.2d 1495, 1497–99 (9th Cir.1987); and *In re Baker,* 736 F.2d 481, 482 (8th Cir.1984) ("Chapter 20" filings not *per se* impermissible), *with In re Ross,* 95 B.R. 509 (Bankr.S.D.Ohio 1988); and *In re Schmick,* 87 B.R. 55 (Bankr.C. D.Ill.1988) ("Chapter 20" filings held violative of 11 U.S.C. §§ 1325(a)(1) and (a)(3).

7. The presence of the City's lien was not raised in that proceeding.

The Debtor also contends that, by not invoking § 1322(b)(2) as a basis of an Objection to confirmation, the Mortgagee should be barred from doing so now by the res judicata impact of the confirmation order. He argues that the confirmation Order implicitly contained a determination that the element of § 1322(b)(2) was satisfied by the Debtor's plan. *See* 11 U.S.C. § 1325(a)(1). *See generally, e.g., In re Gronski,* 86 B.R. 428, 431–32 (Bankr.E.D. Pa.1988); *In re Bonanno,* 78 B.R. 52, 55–56 (Bankr.E.D.Pa.1987); *In re Brown,* 76 B.R. 1013, 1014–15 (Bankr.E.D.Pa.1987); *In re Young,* 76 B.R. 504, 506–07 (Bankr.E. D.Pa.1987); and *In re Flick,* 14 B.R. 912, 918 (Bankr.E.D.Pa.1981).

As in the case of the issue of the impact of res judicata arising from the adversary proceeding in the Debtor's prior case, asserting the issue of the finality of the confirmation order upon the issues raised in this proceeding may prove too much to aid the Debtor's own cause. There is authority in this district for the principle that, having allowed confirmation to occur without completion of attempts to invoke § 506(a) to bifurcate secured claims beforehand, the debtor is barred from doing so. *See In re Lewis,* 64 B.R. 415, 417 (Bankr.E. D.Pa.1986), *aff'd,* 85 B.R. 719, 720, *reconsideration denied,* 89 B.R. 430 (E.D.Pa. 1988). *But see id.* at 432 (holding is restricted to a situation where, as in that case but not here, the debtor specifically stated in his plan that confirmation would constitute a finding that the creditor in issue there had the secured claim against the property which was later attacked in the § 506(a) proceeding).

We note that our own decision in *In re Blakey,* 76 B.R. 465, 466–68, *modified,* 78 B.R. 435 (Bankr.E.D.Pa.1987), implicitly declined to follow the bankruptcy-court decision in *Lewis* on this point. *Accord, Lewis,* 89 B.R. at 432. However, we also observed, in our second *Blakey* Opinion, 78 B.R. at 438, that it would be unfair to invoke the principle that "confirmation constitutes res judicata" against a potentially-secured creditor in a situation where the debtor seeks to utilize it in a post-confirmation § 506(a) proceeding. We would there-fore be disinclined to invoke this principle here, since the Debtor's instant adversary filing, while commenced prior to confirmation, was filed after the date fixed for filing objections to confirmation, pursuant to Bankruptcy Rule 3020(b)(1), *i.e.,* December 23, 1988, twenty days prior to the first-scheduled date of the Confirmation hearing on January 12, 1989.

However, putting aside the res judicata arguments raised by the Debtor, he is nevertheless entitled to substantially all of the relief which he seeks on the merits. Accordingly, an order granting him such relief will be entered.